## Moore v. Rogers.

(Decided October 27, 1931.)

EDWARD J. TRACY for appellant.

JOHN H. KLETTE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Maria Moore, in 1929, was the owner and in the possession of a building situated in the city of Covington, Ky. By a writing executed by her and accepted by Nat P. Rogers, she leased to him for a period of one year, beginning on the 10th day of April, 1929, for an agreed rental of $200 per month, payable in advance, the entire ground floor of her building, with the exception of certain portions indicated in the written contract.

Rogers took possession of that part of the building leased to him, within the time, and according to the provisions of the lease. He occupied it and paid rental thereon as provided in the contract, until the monthly rental was due and payable on or before the 10th day of November, 1929, when he moved out and refused to pay further rent. The appellant instituted this action on the 11th day of December, 1929, to recover of him $200 rental due on or before the 10th day of November, and $200 due on or before the 10th day of December, 1929. To prevent a recovery, the appellee filed an answer in which he traversed the allegations of the petition, and as an affirmative defense alleged that the use of the alley in the rear of the building rented to him had been interrupted by Montgomery-Ward Company's use of it in the erection of a building on a lot fronting on the alley, and that he had requested appellant's agent to release him from the

written contract, and that he had consented to, and did, release him; that he notified the appellant he was vacating the property, and that he could secure a tenant for her who would take over the premises at the same rental he was paying to her, but she refused to rent it to such party; that she had given an option of thirty days to the Solomon Realty Company of Cincinnati, authorizing it to lease the property for her. These alleged facts were pleaded by him in bar and as an estoppel of her right to recover the rental.

Section 7 of the lease is in these words:

"Said rent shall be paid promptly in advance on or before the tenth (10) day of each month and on nonpayment of said rent for five days after the tenth day of said month, and without demand therefor, or the breach of any of the other agreements herein contained, this lease shall be canceled and become void and of no effect and the Lessor may enter and repossess said premises."

The appellee pleaded and relied upon this clause, and his nonpayment of the rental by virtue of it, as a bar to her right of recovery. The trial by a jury resulted in a verdict in favor of the appellee. A judgment was accordingly entered; her petition was dismissed from which judgment she appeals.

It is plain that appellant was entitled to judgment for the two months' rent for which she sued, unless her agent had released appellee from its payment, or she by her alleged conduct had estopped herself to recover it, or by clause 7 and his failure by virtue thereof to pay the monthly rental ipso facto canceled the lease, and released him from its payment. The burden of proof rested upon the appellee as to the first two propositions. The third defense requires a construction of clause 7.

A review of the evidence offered by him to sustain the first two defenses convinces us that there was a total failure of evidence as to both. He makes no claim of a release of the rental by reason of a statement of appellant to him. He claims that her son, Ed Rogers, acted as agent for her, and that he consented for him to abandon the lease and to cease to pay rental. Not only did the appellee fail to prove authority of Ed Rogers to release him from the payment of rental, but he also failed to show that he actually released him therefrom. In this respect

the appellee, when on the witness stand, made this statement:

> "One night I went up to his house or to Mrs. Moore's house; he lived upstairs over his mother, or did at that time, and she was not at home. . . . Him and I talked to each other, and I asked him if they would release me, and he said this, 'I don't see any reason why you couldn't be released, come back and talk to mother,' and I didn't have a chance to go back before possibly he had told her and she came down to the property."

Accepting his statement, it cannot be construed or considered as a release of his obligation to pay the rental, as per the contract. To relieve him of the payment of the rental, the appellee's surrender of the property to her, and its vacation by him, required an express agreement or an unequivocal act implying her assent. A release of the payment of rental is a contractual act, and occurs only through the consent of both parties or their authorized agents. Motch's Adm'r v. Portner et al., 237 Ky. 25, 34 S. W. (2d) 744.

The appellant was in no way responsible for the use of the alley. Whatever was done to interfere with his use of it was done by the adjoining landowner, or tenant, without the authority or consent of the appellant. She did not lease or rent to him the alley, nor a privilege to use it. It is inconceivable that its use by Montgomery-Ward Company could in any way absolve the appellee of his obligation to pay the rent to her.

Relating to his insistence that the appellant refused to enter into a rental contract with any person sent to her by him for that purpose, it is sufficient to say that such contention is without merit. Motch's Adm'r v. Portner et al., supra. He urges that she entered into an option with the Solomon Realty Company authorizing it to rent or lease the property then occupied by the appellee under his rental contract, whereby she agreed to pay the company 5 per cent commission on the first year of the lease, and 1 per cent on the remaining years of the lease, provided it rented the property for her for a monthly rental of $450 per month for a ten-year period. This option was dated October 29, 1929. Prior to its date, on the 17th day of October, 1929, by a writing signed by

appellee, he requested the appellant to release him from his lease with her, and therein he further agreed to vacate the premises within fifteen days after receiving notice from her. The execution and delivery of the option by her to the Solomon Realty Company was permissible under this writing, and it in no sense constituted a bar or an estoppel of her right to collect the monthly rental as per his contract. The mere fact he executed and delivered to her a writing, evidencing his consent to vacate the property on fifteen days' notice from her, conclusively shows that her option with the Solomon Realty Company was for his accommodation, and was not intended to be, and cannot operate as, a release of his obligations to pay her the monthly rental of $200, during the remainder of term fixed in the lease. The appellant was not required to accept nor seek another tenant, or to minimize her damages. She had the right to stand on her contract. Superior Woolen Co. Tailors v. M. Samuels & Co., 219 Ky. 539, 293 S. W. 1078; Abraham v. Gheens, 205 Ky. 289, 265 S. W. 778, 40 A. L. R. 186; Ideal Furniture Co. v. Mazer, 234 Ky. 665, 28 S. W. (2d) 974.

Finally, it is urged that clause 7 of the lease authorized him, because of his own failure to pay the rental as per the contract, to terminate the lease, and that he was thereby relieved of further liability for future rent during the remainder of the life of the lease. Other than the setting up of this clause of the lease in the answer, it does not appear that the parties or their attorneys, or the trial court, gave any further attention to this defense. It was by them ignored absolutely. In brief of counsel of appellee, clause 7 is urged as a complete exoneration of appellee's liability for failure to pay the rental claimed by the appellant, and to support this contention Elliott v. Marrs, 222 Ky. 642, 1 S. W. (2d) 1049, 1050, is relied upon. In that case the yearly rental was $150 to be paid in advance on the 16th day of March of each year as long as the contract should remain in force. The lessee paid the rental thereunder for three years, or up until March 16, 1924. After that date no further payments were made. This provision was in the lease: "Should said amount of yearly payments, or any one of them, be not paid within thirty days after it becomes due, and the parties of the second part or assignees failing to pay in said time above named, then and in that event this contract will become null and void immediately, and

the parties of the second part or their successors are to have no rights or privileges thereunder." The property leased therein was a right of way and incidental privileges to continue in force as long as the rentals were paid. There was no time limit in the contract other than it should not run beyond fifty years. We held that "the life of this lease was not longer than the date to which the rentals were paid, unless the rentals for the subsequent years were paid within 30 days thereafter." The question in the present case was not presented nor considered in the Elliott v. Marrs case, supra, and our holding in it has no application here.

The lease in the present case was for a fixed period of one year, the rental to be paid monthly, and clause 7 thereof is a proviso for the protection of the lessor in the payment of the rental, to make it assured that, if it was not paid monthly in advance, she could retake possession of her property. This clause, when considered in connection with the other provisions of the contract, is in its nature a condition subsequent for the benefit of the appellant, which could have been enforced only by her. It was not intended by the parties to the contract to authorize the appellee to terminate the lease during its life by his nonpayment of the rental. The lease is not susceptible to such an unreasonable construction. 16 R. C. L. sec. 626, p. 1108; Kentucky Chair Co. v. Commonwealth, 105 Ky. 455, 49 S. W. 197, 20 Ky. Law Rep. 1279.

One's intentional violation of his own contract during its life, and which has been fully executed by the other party, will not absolve him from his liability for his debt arising out of and by virtue of his contract.

It is apparent from what we have said, in our opinion, the court erred in refusing to give to the jury at the close of the evidence in behalf of the appellee a peremptory instruction for the appellant.

On another trial, if one is had, if the evidence is the same, the court should peremptorily instruct the jury to find for appellant.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.