### MARSHALL v. FRASER.

Court of Appeals of Kentucky.
March 27, 1953.

L. C. Lawrence, Jamestown, for appellant.

Earl Huddleston, Columbia, for appellee.

MILLIKEN, Justice.

The pivotal question in this case is whether there can be an anticipatory breach of a lessee's covenant to repair the premises. The chancellor rendered a judgment in favor of the lessor for $2,000.

The lease was executed on January 3, 1945, and was to continue for a term of ten years, beginning April 1, 1945, at a monthly rental of $100. The building was in a dilapidated condition at the time of the execution of the lease; it had been severely damaged by a recent fire. The appellant, as lessee, undertook the following covenants in the lease:

"1. The lessee will repair at his own expense, and without expense to the lessor, the said building, particularly including the construction of a built up roof to the second girder from the rear of said building forward from the alley behind same toward the said Public Square and new framing where needed, and all such other work as may be necessary and desirable to put said building in a habitable condition and make same fit for occupancy by lessee. At the expiration of said term hereinbefore set out, such said repairs shall

be and remain the property of the lessor. * * *

"3. In making the repairs hereinbefore mentioned, the lessee will make and do same in a strong, substantial, and workmanlike way, using material of strong, substantial, and workmanlike manner, using materials of strong substantial construction."

After the lease was signed, the lessee took possession of the premises and undertook to make repairs. He repaired the old roof by covering it with tin, pieced together timbers, rafters and crossties which had been damaged in the fire, installed a Celotex ceiling, plastered holes in the walls and laid a new floor. There is a sharp conflict in the evidence as to whether these repairs were made in a workmanlike manner. After they were completed, the lessee opened a furniture store and intended to install a movie theatre later. After using the premises for about eight months for a furniture store, he assigned his rights under the lease to his brother because he had decided to build a theatre on a lot he had acquired. This assignment, however, did not affect the lessee's duties regarding repairs. His brother thereafter started a ten cent store in the building.

There is evidence in the record that the roof leaked after the lessee had attempted to repair it and that the water caused additional damage to the ceiling, walls and floor of the building. After the assignment of the lease, the lessee on several occasions endeavored to patch the roof, but apparently never fully succeeded. Finally, after approximately four years from the date of the lease, the lessee installed a built-up roof, as called for in the lease, which extended from the rear of the building to the second girder, leaving fifty-three feet of tin roof. He then told the lessor he "was through."

After this declaration by the lessee, the lessor instituted an action against the lessee and his brother in which the lessor sought a forefeiture of the lease, possession of the building and damages in the sum of $4,131.34 for the breach of the covenant to repair. Approximately two months after

14

the suit was filed, another fire occurred in the building which rendered it unfit for occupancy. Thereafter the lease was canceled pursuant to its terms, because of the occurrence of the second fire, and the lessor filed an amended petition withdrawing her plea for a forfeiture. After the last fire and during the pendency of this suit, the lessor tore down the building and an adjoining one which she owned also, constructed one large building in their place and rented it to another party.

■ The lessor contends that the lessee breached his covenant to repair when he told her he "was through" and a right of action was immediately vested in her, which could not be defeated or affected by the occurrence of the second fire. However, the brother of the lessee continued to occupy the building and the rent was paid up at the time of the fire. The repairs which the lessee undertook were to make the premises fit for his occupancy, and no time was specified as to when they should be made. As stated in Tiffany on Landlord and Tenant, Vol. 1, Section 117, page 774:

"For the performance of a covenant to make improvements, as for the performance of one for specific repairs, the lessee has, it would seem, the full time of the lease, since during the lease he, and not the landlord, is the one injured by the want of the improvements. A provision, however, that the improvements shall be made immediately, or within a certain time, is binding, and an action may be brought on the lessee's failure so to make them, without awaiting the expiration of the term."

In the case at bar, there had never been any default as to the payment of rent and the lease did not contain a forfeiture provision. At common law there was no doctrine that the material breach of a lease would give right to a cause of action for breach of the entire lease and a fortiori, there was no doctrine of anticipatory breach of a lease. Tiffany on Real Property, Vol. 3, Section 887, page 543; 46 Harvard Law Review 1117; People ex rel. Nelson v. West Town State Bank, 373 Ill.

106, 25 N.E.2d 509, 512. As stated in the last cited authority: "These common-law rules left a definite mark on modern law and in a majority of common-law jurisdictions the decisions are grounded upon these principles."

■ We are confronted at the outset with whether the lessee's declaration that he was through repairing the building can be construed as an anticipatory breach of the lease. His brother continued to occupy the building and the rent was paid. When he made the statement that he was through making repairs there still were several years for the lease to run during which he could change his mind. The fact that no specific time was stated in the lease for the repairs to be completed persuades us that the doctrine of anticipatory breach, if applicable at all, should not here be rigorously applied. Although we have recognized the doctrine in Kentucky, just recently in Jordon v. Nickell, Ky., 253 S.W.2d 237, decided in December, 1952, we refused to apply it so as to accelerate the due dates of future rental payments under an abandoned lease. In the case at bar, the lease was not abandoned, it contained no forfeiture clause for a breach of covenant or anything else, and only required that the appellant, lessee, should return the premises at the end of the lease "in the condition same will be when repaired as aforesaid." In essence, the repairs to be made by the lessee were in the nature of rent or part of the consideration for the lease, and undoubtedly were a factor considered when the parties settled on $100 as the monthly rental. In Jordon v. Nickell we refused to permit an abandonment of the lease, which was a clear-cut breach, to precipitate or accelerate the due date of future rental payments under the lease. We hardly would be consistent in the case at bar if we permitted the declaration of the lessee that he was through making repairs to accelerate the time when they were to be completed or to vitiate the whole lease. Consequently, we conclude that the lessee's obligations were terminated by the fire in accordance with the terms of the lease itself, and that the judgment should be reversed.

The judgment is reversed.